MARK JOSEPH KENNEY (State Bar No. 87345)
JAN T. CHILTON (State Bar No. 47582)
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, CA  94111
Telephone:  (415) 398-3344
Facsimile:  (415) 956-0439

Attorneys for Defendant
BANK OF AMERICA, N.A.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY ALVARADO and JASON TOWNSEND, etc., <br><br> Plaintiffs, <br><br> vs. <br><br> BANK OF AMERICA, N.A., <br><br> Defendant. | Case No.:  3:09-cv-01202-WHA <br><br> **DEFENDANT'S MOTION TO DISMISS; NOTICE OF MOTION; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date:         May 14, 2009 <br> Time:        8:00 a.m. <br> Judge:      Hon. William H. Alsup <br> Courtroom:  9, 19th Floor <br><br> Complaint Date:   November 25, 2008 <br> Trial Date:           Not set <br><br> Accompanying Document:  Request for Judicial Notice |

### TABLE OF CONTENTS

*Page*

NOTICE OF MOTION AND MOTION ........................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................3

I.   INTRODUCTION .............................................................................................3

II.  STATEMENT OF FACTS .................................................................................4

    A.   The Complaint's Allegations ...................................................................4

    B.   Additional Facts Subject To Judicial Notice ..........................................5

III. THE COMPLAINT STATES NO VIABLE CLAIM .........................................7

    A.   Plaintiffs Lack Standing To Sue Under The UCL ...................................7

        1.   No Loss Of Money Or Property Is Alleged .................................8

        2.   Causation Is Not Alleged ...........................................................10

    B.   Plaintiffs Allege No CLRA Claim On Which Relief Could Be Granted ...........11

        1.   There Was No Covered "Transaction" ......................................12

        2.   Plaintiffs Have Alleged No Resulting Damage .........................13

    C.   Plaintiffs Have Not Alleged A Viable Breach Of Contract Claim ........14

        1.   The Complaint Misstates The Agreement's Terms ...................14

        2.   The Complaint Alleges No Breach Of The Contract's True Terms .........16

    D.   A Bank Is Neither A Fiduciary Nor An Agent Of Its Depositor ...........17

    E.   A Depositor Cannot Sue The Bank For Conversion Of A Deposit ........20

IV.  THE FRAUD CLAIMS ARE NOT ALLEGED WITH PARTICULARITY ...................21

V.   CONCLUSION .................................................................................................23

## TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Alperin v. Vatican Bank*, 410 F.3d 532 (9th Cir. 2005)....................................................4

*Animal Legal Defense Fund v. Mendes*, 160 Cal.App.4th 136 (2008)...........................9

*Augustine v. FIA Card Servs., N.A.*, 485 F.Supp.2d 1172 (E.D. Cal. 2007) .................12

*Ball v. FleetBoston Fin. Corp.*, 164 Cal.App.4th 794 (2008) ................................12, 13

*Bank of America etc. Assn. v. Pendergrass,* 4 Cal.2d 258 (1935)................................16

*Berry v. Am. Express Publ'g, Inc.*, 147 Cal.App.4th 224, 227 (2007) .........................12

*Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994) .......................................................4, 5

*Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.*,
  971 F.2d 272 (9th Cir. 1992).................................................................................16

*Buckland v. Threshold Enters., Ltd.*, 155 Cal.App.4th 798 (2007) ...........................7-9

*Casa Herrera, Inc. v. Beydoun*, 32 Cal.4th 336 (2004)...............................................16

*Certified Grocers of Cal., Ltd. v. San Gabriel Valley Bank*,
  150 Cal.App.3d 281 (1983)....................................................................................18

*Chang v. Redding Bank of Commerce*, 29 Cal.App.4th 673 (1994) ...........................13

*Citizens of Humanity, LLC v. Costco Wholesale Corp.*,
  171 Cal.App.4th 1, 22 (2009)........................................................................8, 9, 14

*Copesky v. Superior Court*, 229 Cal.App.3d 678 (1991) ............................................17

*Crocker-Citizens Nat. Bank v. Control Metals Corp.*,
  566 F.2d 631 (9th Cir. 1977)..................................................................................20

*Cruz v. United States*, 219 F.Supp.2d 1027 (N.D. Cal. 2002)....................................17

*Danning v. Bank of America*, 151 Cal.App.3d 961 (1984) .........................................18

*Dorsic v. Kurtin*, 19 Cal.App.3d 226 (1971)..............................................................19

*Downey v. Humphreys*, 102 Cal.App.2d 323 (1951)...................................................17

*Durning v. First Boston Corp.*, 815 F.2d 1265 (9th Cir. 1987)......................................4

*Founding Members of the Newport Beach Country Club v. Newport Beach
  Country Club, Inc.,* 109 Cal.App.4th 944 (2003)...................................................16

*Hall v. Time, Inc.*, 158 Cal.App.4th 847 (2008)......................................................8-10

*Hartless v. Clorox Co.*, 2007 WL 3245260 (S.D. Cal. 2007) .....................................21

*Huong Que, Inc. v. Luu*, 150 Cal.App.4th 400 (2007) ...............................................19

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*In re Bakersfield Westar Ambulance, Inc.*, 123 F.3d 1243 (9th Cir. 1997) .......................... 13, 17

*In re Bernard*, 96 F.3d 1279 (9th Cir.1996) ................................................................. 13

*In re Coupon Clearing Serv., Inc.*, 113 F.3d 1091 (9th Cir. 1997) ................................ 19

*In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541 (9th Cir. 1994) ...................................... 21

*In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999) ........................... 4

*In re Verifone Secs. Litig.*, 11 F.3d 865 (9th Cir. 1993) ............................................. 4

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) ...................................................... 5

*Korean Air Lines Co., Ltd. v. County of Los Angeles*,
   162 Cal.App.4th 552 (2008) ............................................................................... 19

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134 (2003) ........................... 9

*Kwikset Corp. v. Superior Court*,
   171 Cal.App.4th 645, 90 Cal.Rptr.3d 123 (2009) ............................................... 9, 10

*Laster v. T Mobile USA, Inc.*, 407 F.Supp.2d 1181 (S.D. Cal. 2005) ............................ 10

*Lovesy v. Armed Forces Benefit Ass'n*, 2008 WL 4856144 (N.D. Cal. 2008) ................... 21

*Mack v. South Bay Beer Distributors*, 798 F.2d 1279 (9th Cir.1986) ............................. 4

*Metoyer v. Chassman*, 504 F.3d 919 (9th Cir. 2007) ................................................. 14

*Metropolitan Life Ins. Co. v. San Francisco Bank*,
   58 Cal.App.2d 528 (1943) ............................................................................... 20

*Meyer v. Sprint Spectrum L.P.*, 45 Cal.4th 634 (2009) .......................................... 13, 14

*MGIC Idem. Corp. v. Weisman*, 803 F.2d 500 (9th Cir.1986) ...................................... 4

*Morris v. BMW of N. Am., LLC*, 2007 WL 3342612 (N.D. Cal. 2007) ........................... 21

*Oestreicher v. Alienware Corp.*, 544 F.Supp.2d 964 (N.D. Cal. 2008) ........................... 21

*Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir.1998) .................................................... 5

*Parrish v. National Football League Players Ass'n*,
   534 F.Supp.2d 1081 (N.D. Cal. 2007) ................................................................. 21

*Pacific State Bank v. Greene,* 110 Cal.App.4th 375, 390 (2003).  ............................... 16

*Peterson v. Cellco P'ship*, 164 Cal.App.4th 1583 (2008) ........................................ 8, 9

*Petherbridge v. Prudential Sav. & Loan Assn.*, 79 Cal.App.3d 509 (1978) ..................... 17

*Price v. Neal*, 3 Burr. 1354 (1762) ...................................................................... 18

- iii -

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Samura v. Kaiser Foundation Health Plan, Inc.*,
 17 Cal.App.4th 1284 (1993) ........................................................................... 11

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
 806 F.2d 1393 (9th Cir. 1986) ......................................................................... 21

*Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*,
 245 F.2d 67 (9th Cir.1956) ................................................................................ 4

*Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848 (9th Cir. 1995) ......................................... 14

*Smith's Cash Store v. First Nat'l Bank,* 149 Cal. 32 (1906) ................................. 20

*Van Slyke v. Capital One Bank,* 503 F.Supp.2d 1353 (N.D. Cal. 2007) .................. 12

*van't Rood v. County of Santa Clara*, 113 Cal.App.4th 549 (2003) ........................ 19

*Vess v. Ciba-Geigy Corp., USA,* 317 F.3d 1097 (9th Cir. 2003) ............................. 21

*Walker v. Geico Ins. Co.*, __ F.3d __, 2009 WL 595563 (9th Cir. 2009). ............ 7, 14

*Walker v. USAA Cas. Ins. Co.,* 474 F.Supp.2d 1168 (C.D. Cal. 2007) .................. 7-9

*Statutes*

United States Code
 Title 15, Section 1693g ................................................................................... 18

Federal Rules of Civil Procedure
 Rule 9 ..................................................................................... 1, 21-23
 Rule 10 ............................................................................................... 4
 Rule 12 .......................................................................................... 1, 3

California Business and Professions Code
 Section 17200 ............................................................................. 5, 7
 Section 17203 ..................................................................................... 8
 Section 17204 ..................................................................................... 7

California Civil Code
 Section 1750 ..................................................................................... 11
 Section 1761 ..................................................................................... 13
 Section 1770 ............................................................................... 5, 12
 Section 1780 ..................................................................................... 12

Uniform Commercial Code
 Section 3-417 ..................................................................................... 18
 Section 3-418 ..................................................................................... 18
 Section 4-20818
 Section 4A-202 ................................................................................... 18
 Section 4A-205 ................................................................................... 18

- iv -

## TABLE OF AUTHORITIES

*Page(s)*

*Other Authorities*

Barkley & Barbara Clark, The Law of Bank Deposits,
    Collections and Credit Cards (rev. ed. 2009)
        Volume 1, paragraphs 1.06[3], [4][c] ............................................................. 18

Henry J. Bailey & Richard B. Hagedorn, Brady on Bank Checks (rev. ed. 2009)
        Volume 1, paragraphs 1.01, 1.02 ..................................................................... 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION TO DISMISS

Please take notice that on May 14, 2009 at 8:00 a.m. or as soon thereafter as counsel can be heard in Courtroom 9 of the above-entitled Court located on the 19th Floor of the Federal Building at 450 Golden Gate Street, San Francisco, California, defendant Bank of America, N.A. ("BofA") will move to dismiss plaintiffs' complaint and each of its causes of action under Fed. R. Civ. P. 9(b) and 12(b)(6) for failure to allege fraud with particularity and failure to state a claim on which relief can be granted for the following reasons:

1.      Plaintiffs lack standing to bring a claim under California Business and Professions Code section 17200 because they allege no loss of money or property as a result of the unfair competition they attack.

2.      The second cause of action states no actionable claim under California's Consumers Legal Remedies Act because it does not aver a transaction within the coverage of that Act and because plaintiffs do not allege they incurred any loss or damage as a result of relying on any misstatement in violation of the Act.

3.      The third cause of action alleges no viable claim for breach of fiduciary duty because a bank owes no fiduciary duty to its depositors even when it offers to make payments as ordered by the depositor online.

4.      The fourth cause of action alleges no viable claim for breach of contract.  BofA's Online Service Agreement does not contain the promises the complaint alleges.  The complaint does not allege breach of the Online Service Agreement's actual terms.

5.      The fifth cause of action does not allege an actionable claim for conversion because, with exceptions not applicable here, money cannot be converted.

6.      The sixth cause of action does not allege an actionable claim for breach of agency because BofA does not act as an agent for depositors in making payments as ordered online.  The Online Service Agreement shows that the depositors do not control BofA in the execution of their payment orders.

7.      The first, second, third and sixth causes of action allege fraud claims within the scope of Fed. R. Civ. P. 9(b) but fail to comply with that rule's specific pleading requirement.

1    The motion is based on the complaint, this notice, and the accompanying memorandum of

2    points and authorities and request for judicial notice as well as all other records on file in this

3    action.

4

5    DATED:  April 2, 2009                              SEVERSON & WERSON
                                                         A Professional Corporation
6
                                                         /s/ *Jan T. Chilton*
7
                                                         By:_____
8                                                                    Jan T. Chilton

9                                                        Attorneys for Defendant
                                                         Bank of America, N.A.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Despite the complaint's more grandiose framing, this putative class action arises from a single FAQ (frequently asked question and answer) on defendant Bank of America, N.A.'s ("BofA's") website which, at worst, did not clearly reflect the terms of the very clear Online Service Agreement which governs the online bill payment service that gives rise to this suit.

The Online Service Agreement states that BofA may choose, in its sole discretion, to make a bill payment ordered online by one of three methods:  electronic transmission, corporate check or personal check.  The Agreement also specifies that payments made by the first two means are debited to the depositor's account on the "Deliver By" date specified by the depositor for delivery of the payment to the payee.  Payments made by personal check are debited from the depositor's account on the date the personal check is presented to BofA for payment.

The FAQ asked when money is withdrawn from the depositor's account.  The answer stated in part:  "In most cases, we make payments electronically and the amount is automatically subtracted from your account on the Deliver By date.  In other cases, we may elect to print and mail a check to arrive by the delivery date you requested.  Your money will then leave your account when the check is presented to us for payment."

The last two sentences, plaintiffs claim, do not clearly distinguish between corporate and personal checks, leaving depositors with the false impression that their accounts will be debited for payments by corporate check on the date those checks are presented for payment rather than on the Deliver By date as specified in the Online Service Agreement.

From this supposed discrepancy between FAQ and Online Service Agreement, plaintiffs try to fashion six causes of action.  Each fails to state a claim on which relief may be granted for the reasons outlined in the notice of motion and explained in greater detail below.  Accordingly, the Court should dismiss the complaint and each of its causes of action under Fed. R. Civ. P. 12(b)(6).

## II.

## STATEMENT OF FACTS

On a motion to dismiss, the Court accepts as true the facts properly pleaded in the complaint, but not conclusions of law.[1]  Under the "incorporation by reference doctrine," the Court may also consider exhibits to the complaint[2] as well as other documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading."[3]  "On a motion to dismiss, [the Court] may [also] take judicial notice of matters of public record outside the pleadings.[4]

### A.    The Complaint's Allegations

Rodney Alvarado ("Alvarado") resides in Stockton; Jason Townsend ("Townsend") in Beverly Hills.  (Compl., ¶¶7, 8.)  Each has had an interest-bearing checking account with BofA and has used BofA's online banking services for some time.  (*Id.*)  BofA is a national bank.  (*Id.*, ¶9.)

According to the complaint (¶¶3, 5, 22, 25, 28, 52, 70, 71), BofA makes two material representations in advertising its electronic bill payment services:  (i) The service is "free." (ii) When BofA makes pays a bill by a "paper check," it will not withdraw the funds from the customer's account until the payee presents the check to BofA for payment.

Plaintiffs say both of these representations are false because rather than waiting until the "paper check" is presented for payment, BofA withdraws the amount of the bill payment from the customer's account "immediately," deposits the withdrawn funds in BofA's own accounts, and earns for itself interest on the "float" period between the date of the debit and the date the "paper check" is cashed or presented for payment.  (Compl., ¶¶3, 5, 24, 26, 27, 72, 77, 78.)

---

[1]     *Alperin v. Vatican Bank*, 410 F.3d 532, 541 (9th Cir. 2005); *In re Verifone Secs. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993).

[2]     Fed. R. Civ. P. 10(c); *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

[3]     *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).

[4]     *MGIC Idem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.1986). *Mack v. South Bay Beer Distributors*, 798 F.2d 1279 (9th Cir.1986); *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir.1956).

Plaintiffs also allege that BofA does not tell its customers about its supposed actual practice of prematurely withdrawing funds from their accounts.  (Compl., ¶¶27-29, 64.)

Based on these same purported facts, the complaint spins out seven so-called causes of action for (1) violation of California's Unfair Competition Law (Bus. & Prof. Code, §17200); (2) violation of California's Consumer Legal Remedies Act (Civ. Code, §1770), (3) breach of fiduciary duty, (4) breach of contract, (5) conversion, (6) breach of agency, and (7) unjust enrichment.  (Compl., ¶¶33-98.)

Plaintiffs seek relief for themselves individually and also for a putative class of other online customers whose accounts were debited for online bill payments by "paper check" before those checks were presented for payment.  (Compl., ¶¶1, 14-21.)

### B.    Additional Facts Subject To Judicial Notice

Though plaintiffs allege they entered into a contract with BofA regarding its bill payment service (Compl., ¶¶70-72), the complaint neither attaches a copy of the contract nor alleges its terms *in haec verba* or by effect.  Under Ninth Circuit precedent, however, the Court may cut through this coy pleading technique and take judicial notice of the undisputed and indisputable terms of BofA's Online Service Agreement to which plaintiffs agreed in order to use the bill payment service[5] and which is, and for years has been, publicly available on BofA's website.[6]

---

[5]    To establish an online account, a prospective user must first click a box at the base of a scrollable Terms and Conditions Agreement, which begins with the words:  "You agree to the Service Agreement."  The box, in turn is beside the statement:  "I have reviewed and agree with the Service Agreement and Terms and Conditions listed above."  *See* <https://onlineeast3.bankofamerica.com/cgi-bin/ias/A/1/EnrollmentStateAndProductSelectorControl>.

[6]    *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (considering surrounding webpages to determine whether accused webpage was defamatory in context); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir.1998) (district court properly considered documents attached to a motion to dismiss that described the terms of plaintiff's group health insurance plan, where plaintiff alleged membership in the plan, his claims depended on the conditions described in the documents, and plaintiff never disputed their authenticity); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir.1999); *Branch*, 14 F.3d at 454.  BofA's Online Service Agreement is publicly available at <http://www.bankofamerica.com/onlinebanking/index.cfm?template=service_agreement>.  A copy is attached as Exhibit A to the accompanying request for judicial notice.

BofA's Online Service Agreement provides in pertinent part:

**B. Online Banking Bill Payment Processing**

Bank of America customers with a deposit account may use the Bill Payment product in the following manner:

\*        \*        \*

You authorize us to make payments in the manner we select from the following methods:

Electronic transmission. Most payments are made by electronic transmission.

Corporate check – This is a check drawn on our account or the account of our vendor. If a Payee on a corporate check fails to negotiate the check within 90 days, we will stop payment on the check and recredit your account for the amount of the payment. If a corporate check is returned to you prior to the end of the 90 day period, please inform us immediately so that we can stop payment on the check and recredit your account.

Personal check – This is a check drawn on your account based on your authorization under this Agreement.

Scheduling Bill Payments

The scheduled delivery date is the date you enter for the payment to be delivered to the Payee. ***For payments made by electronic transmission or corporate check, the payment amount will be debited from, or charged to the account that you designate on the scheduled delivery date***. If the scheduled delivery date is a weekend or non-bank business day, then the delivery date will be the prior bank business day. ***For payments made by personal check, the account you designate will be debited when the check is presented to us for payment which may occur before, on or after the scheduled delivery date.***

(RJN, Ex. A, §III.B. (emphasis added).)

The FAQ which was also posted on BofA's website[7] and on which plaintiffs apparently rely as the basis for all their claims in this case[8] stated:

---

[7]      The Court may properly take judicial notice of this FAQ. Although the wording has now changed, the FAQ was previously accessible to the public at <https://onlineeast2.bankofamerica.com/cmsContent/en_US/eas-docs/help/acct001.html>.

[8]      BofA says "apparently rely" because the complaint does not mention this FAQ expressly nor even paraphrase its terms accurately. However, plaintiffs attached a printout of this FAQ to their opposition to the motion to dismiss that BofA filed while this case was pending in the Eastern District of California, and plaintiffs argued that it—and only it—showed that BofA had                                                                                    (Fn. cont'd)

**When is the money for the payment withdrawn from my Pay From account?**

The actual delivery date for a payment may vary from the **Deliver By** date estimate.  You should always have funds available to cover the payment on the **Deliver By** date.[9]

In most cases, we make payments electronically and the amount is automatically subtracted from your account on the Deliver By date. *In other cases, we may elect to print and mail a check to arrive by the delivery date you requested.  Your money will then leave your account when the check is presented to us for payment.*

(RJN, Ex. B (emphasis added).)

### III.

### THE COMPLAINT STATES NO VIABLE CLAIM

### A.    Plaintiffs Lack Standing To Sue Under The UCL

Previously, "any person" could sue under California Business and Professions Code section 17200 (the "UCL").  That changed in November 2004, when California voters approved Proposition 64.  Now, to state a claim under the UCL, a plaintiff must show he or she "[i] suffered injury in fact and [ii(a)] has lost money or property [ii(b)] as a result of the unfair competition."[10]  As the bracketed numbers illustrate, the new standing requirement has two main elements.  The first, "injury in fact," incorporates federal Article III standing notions.[11]  The second has two subparts:  "loss of money or property" and loss "as a result of" the unfair competition.

---

(Fn. cont'd)

promised depositors that it would not debit their accounts for "paper" checks until they were presented for payment.

9       In the fall of 2008, the second sentence of this paragraph was changed to read:  "Please make sure that there are sufficient available funds in your account to cover your payment beginning a few days before the Deliver By estimate and keep such funds available until the payment is deducted from your account."

10      Cal. Bus. & Prof. Code, §17204; *Walker v. USAA Cas. Ins. Co.,* 474 F.Supp.2d 1168, 1171 (C.D. Cal. 2007), *aff'd sub nom., Walker v. Geico Ins. Co.,* __ F.3d __, 2009 WL 595563 (9th Cir. 2009).

11      *Buckland v. Threshold Enters., Ltd.,* 155 Cal.App.4th 798, 814 (2007).

1    Plaintiffs' first cause of action fails to state a viable UCL claim because it does not allege

2  the second element of standing.  The complaint sets forth no facts showing that plaintiffs lost

3  money or property or that any such loss was caused by the unfair competition plaintiffs allege.

### 1.    No Loss Of Money Or Property Is Alleged

5    "Loss of money or property" refers to a loss that can be restored by a restitution order

6  under Business and Professions Code section 17203.[12]  Hence, "a plaintiff must have either prior

7  possession [of] or a vested legal interest in the money or property lost."  *Walker,* 474 F.Supp.2d at

8  1172.

9    Plaintiffs allege no such loss.  Their complaint mentions no property whatever, only

10  money.  The only money they say they once possessed but no longer have are the sums they di-

11  rected BofA to pay to their creditors.  (Compl., ¶¶22, 27, 29, 31.)  But that money was not "lost."

12  Plaintiffs do not claim BofA took those sums.  Rather, they at least inferentially concede that the

13  money was used to pay their creditors in accordance with their directions to BofA.  A consumer

14  has not "lost" money if he or she spends it voluntarily and receives in return the product or ser-

15  vice he or she paid for—i.e., when the consumer has received the benefit bargained for.[13]  Here,

16  plaintiffs bargained for payments to their creditors.  They received the requested payments.  They

17  "lost" no money as a result.

18    Plaintiffs also complain about interest on the sums that they directed BofA to pay their

19  creditors.  Plaintiffs do not claim that they ever possessed the interest or that interest was credited

20  to their accounts and then later subtracted from them.  Quite to the contrary, the complaint alleges

21  that BofA withdrew the bill payment sums from plaintiffs' accounts early, thereby "depriv[ing

22  them] of any applicable interest that would otherwise accrue on those funds."  (Compl., ¶26.)

23    Since plaintiffs never possessed the unpaid interest, that money could be treated as "lost"

24  and confer standing to sue under the UCL only if plaintiffs alleged facts showing they had "a

---

26  [12]   *Buckland*, 155 Cal.App.4th at 817; *Citizens of Humanity, LLC v. Costco Wholesale Corp.,*
171 Cal.App.4th 1, 22 (2009).

27  [13]   *Peterson v. Cellco P'ship*, 164 Cal.App.4th 1583, 1591-92 (2008); *Hall v. Time, Inc.*,
28  158 Cal.App.4th 847, 855 (2008).

1  vested legal interest in the money."  The complaint alleges no such facts and could not truthfully

2  do so.

3        Plaintiffs have no statutory or common law right to interest on their bank accounts.  If

4  they are entitled to interest, the entitlement flows from their agreement with BofA.  Plaintiffs'

5  agreement with BofA—the Online Service Agreement quoted at page 6 above—clearly states

6  when BofA will debit their accounts for online bill payments.  Plaintiffs had no "vested legal in-

7  terest" in either the sums used to make bill payments or any interest earnings on those sums after

8  the debit date specified in the Online Service Agreement.  As plaintiffs do not allege BofA with-

9  drew bill payment sums from their accounts earlier than the dates specified in that agreement,

10  they fail to show any "vested legal interest" in the unearned interest.

11        Plaintiffs also complain that *BofA* earned interest on their bill payment amounts and never

12  paid that interest to them.  (Compl., ¶¶27, 31.)  This allegation fails to show the required loss of

13  money because plaintiffs have no vested legal interest in BofA's earnings.[14]

14        Finally, plaintiffs claim injury because "they have not received the 'free' online banking

15  and bill paying services that they were led to believe they would receive ...."  (Compl., ¶42.)

16  Apart from the fact that this allegation is simply a restatement, in other words, of the lost interest

17  claim, it fails to satisfy the UCL's standing requirement because the allegedly disappointed ex-

18  pectation—free services—is not a monetary loss.[15]

19        In short, the complaint fails to allege a "loss of money or property" that could be a proper

20  subject of restitution under section 17203 and therefore fails to establish plaintiffs' standing.

21  _____

22  [14]    *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1149 (2003); *Walker,*
   474 F.Supp.2d at 1173-74.

23  [15]    *See Hall*, 158 Cal.App.4th at 856-57 (loss of "free" preview period not a loss of money
   when customer kept book past preview period anyway); *see also Kwikset Corp. v. Superior*

24  *Court,* 171 Cal.App.4th 645, 90 Cal.Rptr.3d 123, 130-32 (2009) (no loss of money where plaintiff
   obtained desired lock for his money even if the purchase was induced by a false "Made in USA"

25  label); *Citizens of Humanity, LLC,* 171 Cal.App.4th at 22 (loss of goodwill not loss of money);
   *Animal Legal Defense Fund v. Mendes*, 160 Cal.App.4th 136, 146-47 (2008) (no loss of money

26  where plaintiffs bought milk they otherwise would not have bought if they had thought some of
   the producing herd may have been raised by respondents in cruel conditions); *Peterson,* 164 Cal.

27  App.4th at 1592-93 (no loss of money when consumer received insurance bargained for even
   though issuer was not properly licensed); *Buckland,* 155 Cal.App.4th at 818-19 (no loss of money

28  when purchaser bought product suspecting it was falsely advertised).

- 9 -

1

**2.      Causation Is Not Alleged**

2      The second subpart of the loss of money requirement "imposes a causation requirement.

3 The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a

4 showing of a causal connection or reliance on the alleged misrepresentation" or other unfair com-

5 petition.[16]

6      Plaintiffs' complaint fails to satisfy this causation requirement.  It alleges no facts show-

7 ing any causal connection between any monetary loss and the unfair competition it challenges.

8      To the extent plaintiffs' rely on the allegedly unclear FAQ or other supposed "misrepre-

9 sentations" or "deceptive marketing and sales practices" (see Compl., ¶¶37, 38), plaintiffs fail to

10 show any causation because they do not allege they even read the FAQ—or other unspecified

11 misrepresentations or marketing or sales materials—much less that they relied upon them.  *See*

12 *Laster,* 407 F.Supp.2d at 1194; *see also* Compl., ¶30.

13      Moreover, even if they had read the FAQ and as a result decided to use BofA's online bill

14 payment service—a highly unlikely scenario—plaintiffs could still not prove the required causal

15 connection.  Plaintiffs received the bill payment service they bargained for.[17]  They cannot claim

16 loss caused by an incidental misrepresentation about that service even if it induced them to use

17 the service.[18]

18      Also, no consumer could reasonably rely to his or her detriment on any misleading aspect

19 of the FAQ.  At worst, the FAQ does not clearly distinguish, as the Online Service Agreement

20 does, between bill payments by corporate check and those by personal check.  But the FAQ *does*

21 unquestionably state that most bill payments are made by electronic transmission, and those pay-

22

23 [16]      *Hall*, 158 Cal.App.4th at 855; *see also Laster v. T Mobile USA, Inc.*, 407 F.Supp.2d 1181, 1194 (S.D. Cal. 2005).

24 [17]      As already stated, plaintiffs do not deny that BofA paid the payees the amounts plaintiffs
directed.  Plaintiffs admit they "bargained for" those payments by entering into a contract with
25 BofA. (Compl., ¶¶70-72.)  The contract, the Online Service Agreement, specifies clearly when
sums for bill payments will be withdrawn from plaintiffs' accounts.  Plaintiffs do not allege that
26 payments were withdrawn any earlier than the agreement specifies.

27 [18]      "[R]eal parties clearly intended to buy locksets. The mere fact they were induced to buy
petitioners' locksets because of a 'Made in U.S.A.' or similar label does not mean real parties
28 'lost money or property' as a result."  *Kwikset Corp.*, 90 Cal.Rptr.3d at 130.

- 10 -

ments are debited to the depositor's account on the Deliver By date.  Further, the Online Service Agreement clearly states that BofA selects the payment method (electronic transmission, corporate check, or personal check) as *it* chooses.  For that reason, the depositor cannot determine in advance whether any payment he or she orders will be made by a means dictating withdrawal from his or her account on the Deliver By date as opposed to the presentment date.  So a depositor cannot reasonably rely on the FAQ to think that any of his or her online bill payments or any particular payment will be made by "check" rather than by electronic transmission and thus be debited to his or her account on the presentment date rather than the Deliver By date.

To the extent plaintiffs base their UCL claim on unlawful business practices, they cite as predicate statutes only the Field Code's definitions of fraud and the Consumers Legal Remedies Act.  (Compl., ¶38.)  Detrimental reliance is a requisite element of the acts those statutes prohibit.  The complaint does not allege such reliance.  It also fails to allege any facts showing how any violation of those statutes caused plaintiffs to lose money.

Finally, to the extent they rely on any "unfair" business practice, plaintiffs again fail to show what it is and how it caused them any monetary loss.  The Online Service Agreement dictates when depositors' accounts will be debited for online bill payments.  Plaintiffs do not allege that the agreements provisions are unfair or that BofA failed to adhere to them.  The UCL's "unfairness" term "does not give the courts general license to review the fairness of contracts but rather has been used to enjoin deceptive or sharp practices."[19]  Plaintiffs allege no other facts to show the Online Service Agreement is unfair or that if it were so, how the unfairness caused them to lose money.

For this additional reason, the complaint does not allege UCL standing sufficiently.  Accordingly, the first cause of action should be dismissed.

## B.   Plaintiffs Allege No CLRA Claim On Which Relief Could Be Granted

Plaintiffs' second cause of action attempts to allege a claim under the Consumers Legal Remedies Act ("CLRA"; Civ. Code, §1750, et seq.).  It fails to do so for at least two reasons.

---

[19]    *Samura v. Kaiser Foundation Health Plan, Inc.*, 17 Cal.App.4th 1284, 1299 n. 6 (1993).

First, it fails to allege a transaction to which the CLRA applies.  Second, plaintiffs have not al-leged any damage "suffer[ed] … as a result of" the alleged CLRA violation.  Civ. Code, §1780(a).

### 1.     There Was No Covered "Transaction"

The CLRA prohibits only certain types of deceptive conduct "undertaken … in a transac-tion intended to result or which results in the sale or lease of goods or services …."  Civ. Code, §1770(a).  Plaintiffs' second cause of action fails at the outset because it alleges no such trans-action.

As this Court, among others, has held, the extension of credit in connection with a credit card, for example, is not a "transaction" within the CLRA's scope.[20]  "[N]either the express text of CLRA nor its legislative history supports the notion that credit transactions separate and apart from any sale or lease of goods or services are covered under the act."  *Berry,* 147 Cal.App.4th at 233.

The most recent case in this consistent line of authority holds that a credit card is not cov-ered by the CLRA even when the consumer is a convenience user who never borrows on the card but uses it only as a payment service:

> Ball alleges in her proposed second amended complaint that "de-fendant provides 'payment services' for 'convenience users' who wish to make purchases without paying cash or writing a check and where monthly balances are paid in full on a regular basis. On the other hand, 'credit features' are for those customers who wish to borrow by way of the use of their Bank of America credit card. Thus, in all instances, the Bank of America standard form credit card agreement is in part a contract for the retail purchase of ser-vices." Ball argues her case is not covered by *Berry* because "when [Ball] entered into the standard form credit card account agreement with Bank of America, it was a transaction intended to result in the sale or lease of goods o[r] services to [her]."  We disagree.  We find the holding of *Berry* to be well reasoned and correct.  Whatever Ball intended to do with her credit card, the act of extending credit alone is not covered by the CLRA.

*Ball*, 164 Cal.App.4th at 798.

---

[20]     *Van Slyke v. Capital One Bank,* 503 F.Supp.2d 1353, 1358-59 (N.D. Cal. 2007); *Ball v. FleetBoston Fin. Corp.*, 164 Cal.App.4th 794, 798-99 (2008); *Berry v. Am. Express Publ'g, Inc.*, 147 Cal.App.4th 224, 227, 230-33 (2007); *Augustine v. FIA Card Servs., N.A.*, 485 F.Supp.2d 1172, 1175 (E.D. Cal. 2007).

1        This case involves also involves a payment means attached to a debt.  The complaint al-

2   leges that BofA offers its online payment service in connection with bank accounts.  (Compl.,

3   ¶¶7, 8, 48, 50.)  A bank account is a credit transaction—only the credit flows in the opposite di-

4   rection from a credit card.  "By depositing money into a bank account, the depositor enters a

5   debtor-creditor relationship with the bank.  Title to the funds passes to the bank, and the depositor

6   receives a contract claim against the bank for an amount equal to the account balance."[21]

7        The fact that the depositor extends credit to the bank, rather than the other way around, is

8   insufficient to distinguish this case from *Ball*.  Nothing in the CLRA or its legislative history sug-

9   gests, let alone states, that it applies to transactions in which the plaintiff extends credit to the de-

10  fendant but not credit transactions in which the defendant lends to the plaintiff.

11       Nor does the linkage of bill payment services[22] to the bank account draw this "trans-

12  action" within the CLRA's scope.  *Ball* held that the payment service attendant to a credit card

13  insufficient for that purpose.  Online bill payment is no different in kind from the credit card's

14  payment feature, and so it is not enough to draw this "transaction" within the CLRA's scope.

15            **2.**       **Plaintiffs Have Alleged No Resulting Damage**

16       As the California Supreme Court recently explained, Civil Code section 1780(a) "provides

17  that in order to bring a CLRA action, not only must a consumer be exposed to an unlawful prac-

18  tice, but some kind of damage must result."[23]  "[T]he Legislature, … in drafting the CLRA, set a

19  low but nonetheless palpable threshold of damage, and did not want the costs of a lawsuit to be

20  incurred when no damage could yet be demonstrated."  *Id*. at 646.

21       In this case, plaintiffs fail to allege any resulting damage and thus fail to surmount the

22  CLRA's threshold for standing.  The second cause of action does not attempt to allege proxi-

23

---

24  [21]    *In re Bakersfield Westar Ambulance, Inc*., 123 F.3d 1243, 1246 (9th Cir. 1997), citing *In re Bernard*, 96 F.3d 1279, 1282 (9th Cir.1996), *citing Chang v. Redding Bank of Commerce*,

25  29 Cal.App.4th 673, 681 (1994).

26  [22]    Of course, the fact that the bill payment feature is referred to in common speech and by BofA as a "service" does not make it a "service" for CLRA purposes.  "Service" is a defined term under the CLRA and so the statutory definition, not popular usage, governs its meaning.  *See* Civ.

27  Code, §1761(b).

28  [23]    *Meyer v. Sprint Spectrum L.P*., 45 Cal.4th 634, 641 (2009).

mately caused harm.  Instead, it simply avers that a court may enjoin CLRA violations[24] and that "[p]laintiffs also are entitled to recover actual or statutory compensatory/monetary damages … restitution … and punitive damages …."  (Compl., ¶¶53, 54.)  Those allegations are insufficient to establish standing under the CLRA.  Furthermore, for the reasons explained above (pp. 8-11), plaintiffs cannot establish resulting damage in this case.  They do not and cannot allege they reasonably relied to their detriment on the FAQ.  They have presented no other basis for their claims.

Since the second cause of action alleges neither a covered transaction nor resulting damages, it states no viable claim under the CLRA and should be dismissed.

### C.    Plaintiffs Have Not Alleged A Viable Breach Of Contract Claim

Plaintiffs' fourth cause of action for breach of contract should be dismissed because (a) it alleges contractual terms different from those contained in the judicially noticeable contract, and (b) it does *not* allege facts establishing that BofA breached the actual terms of the contract.

Plaintiffs allege they entered into a contract with BofA by signing up for its online bill payment service.  (Compl., ¶70.)  Without attaching a copy of the contract, plaintiffs aver that BofA "represented and agreed that, when paper checks are issued by Defendant as part of an electronic banking transaction, its customers' funds would not be withdrawn from their accounts until "the payee cashes the check."  (*Id.*, ¶71.)  Plaintiffs say BofA breached this promise by "ignoring the terms of the parties' agreement and by prematurely withdrawing funds from Plaintiffs' accounts …."  (*Id.*, ¶72.)

#### 1.    The Complaint Misstates The Agreement's Terms

Plaintiffs' breach of contract claim is not viable, in the first place because the parties' agreement does not contain the promise plaintiffs claim was breached.  The Online Service Agreement does not mention "paper checks."  Instead, it provides that BofA may fulfill a customer's bill payment request in one of three ways:  by electronic transmission, corporate check, or

---

[24]     As *Meyer* makes clear, resulting damage is a threshold which a plaintiff must surmount in order to obtain any relief under the CLRA, including injunctive relief.  *Meyer,* 45 Cal.4th at 643-46.  The same is true of the UCL.  Injunctive relief is unavailable under that statute, too, unless the plaintiff establishes standing by showing loss of money or property as a result of the unfair competition.  *Walker v. Geico Gen. Ins. Co.,* 2009 WL 595563 at *1; *Citizens of Humanity, LLC,* 171 Cal.App.4th at 22.

1  personal check.[25]  (RJN, Ex. A, §III.B., 5th dotted ¶.)  The Online Service Agreement further pro-

2  vides that payments by electronic transmission or by corporate check will be debited to the cus-

3  tomer's account on the scheduled Deliver By date—that is, "the date you [the customer] enter for

4  the payment to be delivered to the Payee."  (RJN, Ex. A, §III.B. 6th dotted ¶, 1st sub-¶.)  Pay-

5  ments by personal check will be debited to the customer's account when the check is presented to

6  BofA for payment.  (*Id.*)

7        Thus, contrary to the complaint's allegations, the parties' actual agreement says nothing

8  about "paper checks."  Nor does it promise that all online bill payments made by check will be

9  debited to the customer's account only when the check is presented for payment.  Instead, the

10  Online Agreement expressly provides that payments by corporate check are debited on the sched-

11  uled delivery date, and only payments by personal check are debited on the date of presentment.

12        Nor can the Online Service Agreement's clear provisions be contradicted by reference to

13  the supposedly inconsistent explanation in the FAQ recited above.  The Online Service Agree-

14  ment is an integrated written contract.[26]  Extrinsic evidence, such as the FAQ answer, is not

15  admissible to vary the terms of the Online Service Agreement which is crystal clear about when

16  accounts are debited for online bill payments.[27]  " '[E]xtrinsic evidence cannot be admitted to

17

18

19

---

20  [25]    As the Online Agreement explains, a corporate check is one "drawn on our [BofA's] ac-
count or the account of our vendor; whereas, a personal check is one "drawn on your account
based on your authorization under this Agreement."  (RJN, Ex. C, §III.B., 5th dotted ¶.)

21
22  [26]    Though it lacks an express integration clause, the Online Service Agreement satisfies the
other criteria for an integration under California law.  *See Metoyer v. Chassman*, 504 F.3d 919,
935 (9th Cir. 2007) ("An express integration clause is not necessary to a determination that an
23  agreement is integrated."); *Sicor Ltd. v. Cetus Corp*., 51 F.3d 848, 859 (9th Cir. 1995) ("To deter-
mine whether a document is an integrated contract not susceptible to modification by parol evi-
24  dence under California law, we must consider three additional factors: 'the language and com-
pleteness of the written agreement [,] the terms of the alleged oral agreement and whether they
25  contradict those in writing, [and] whether the oral agreement might naturally be made as a sepa-
rate agreement[.]' ")

26  [27]    To reiterate:  The Online Service Agreement provides that payments by electronic
transmission or by corporate check will be debited to the customer's account on the scheduled
27  delivery date—that is, "the date you [the customer] enter for the payment to be delivered to the
Payee."  (RJN, Ex. C, §III.B. 6th dotted ¶, 1st sub-¶.)  Payments by personal check will be deb-
28  ited to the customer's account when the check is presented to BofA for payment.  (*Id.*)

1  prove what the agreement was … because as a matter of law the agreement is the writing itself.'

2  'Such evidence is legally irrelevant and cannot support a judgment.' "[28]

3       Not only is extrinsic evidence not admissible—let alone "read into"—a written integrated

4  agreement for the purpose of varying its clear terms, but a contrary extrinsic promise, such as the

5  FAQ on which plaintiffs rely, cannot even be the basis of a fraud claim.

> Under California law, parol evidence cannot be introduced to show
> fraud or misrepresentation if the parol evidence contradicts the lan-
> guage of an integrated contract: "[I]f the false promise relates to the
> matter covered by the main agreement and contradicts or varies the
> terms thereof, any evidence of the false promise directly violates
> the parol evidence rule and is inadmissible."  For parol evidence of
> fraud or misrepresentation to be admissible under California law,
> "it must tend to establish some independent fact or representation,
> some fraud in the procurement of the instrument or some breach of
> confidence concerning its use, *and not a promise directly at vari-*
> *ance with the promise of the writing.*" [29]

12       Since the Online Service Agreement does not contain the promise plaintiffs' fourth cause

13  of action alleges BofA breached, the cause of action alleges no claim on which relief may be

14  granted.

15            **2.       The Complaint Alleges No Breach Of The Contract's True Terms**

16       The complaint does not allege that BofA breached its actual promise under the Online

17  Agreement.  It avers only that BofA "prematurely" withdrew funds from customers' accounts.

18  Since the complaint misstates the parties' agreement, however, that conclusory allegation does

19  not establish a breach of the actual terms of the Online Agreement.

20       Plaintiffs do not forthrightly allege that BofA debited their accounts for online bill pay-

21  ments by personal check before the date of presentment of the personal check.  They do not be-

---

22  [28]     *Casa Herrera, Inc. v. Beydoun*, 32 Cal.4th 336, 344 (2004) (citations omitted); *see also*

23  *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*,
   109 Cal.App.4th 944, 957-60 (2003) (excluding a contract drafter's contemporaneous correspon-

24  dence which purported to explain a written contract's terms in a manner inconsistent with the
   contract's clear provisions).

25  [29]     *Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.*, 971 F.2d 272, 280-81 (9th

26  Cir. 1992) (citations omitted); *accord:  Bank of America etc. Assn. v. Pendergrass*, 4 Cal.2d 258,
   263 (1935); *Pacific State Bank v. Greene,* 110 Cal.App.4th 375, 390 (2003).  Here, unlike *Pacific*

27  *State Bank*, the FAQ answer does not state any "fact" about the Online Agreement's contents, but
   instead, under plaintiffs' reading states a promise at variance with the Online Agreement's terms

28  and thus falls squarely within the *Pendergrass* rule.

1   cause they cannot.  In fact, BofA has made no online bill payment for either Alvarado or Town-

2   send by personal check since at least 2006.[30]

3        Nor does the complaint allege that BofA debited the plaintiffs' accounts for an online bill

4   payment by corporate check before the scheduled Deliver By date.  Again, plaintiffs make no

5   such allegation because they cannot do so truthfully.  Since 2006, BofA has not made an online

6   bill payment for Alvarado by corporate check.  Since 2006, BofA has made some online bill

7   payments for Townsend by corporate check, but always debited those payments from Townsend's

8   account on the scheduled delivery date, as promised.  (*See* n. 30 below.)

9        Since the fourth cause of action alleges neither the true terms of the parties' agreement nor

10  breach of the true terms, it fails to state a viable breach of contract claim.  It should be dismissed.

11      **D.    A Bank Is Neither A Fiduciary Nor An Agent Of Its Depositor**

12       Plaintiffs' third cause of action purports to allege a claim for breach of fiduciary duty.

13  Their sixth cause of action is for breach of agency.  Neither cause of action states a claim on

14  which relief may be granted since BofA is not its depositors' fiduciary or agent.  None of the facts

15  alleged in those claims change the nature of the bank-depositor relationship from its well-estab-

16  lished character as a debtor-creditor relationship.

17       "By depositing money into a bank account, the depositor enters a debtor-creditor relation-

18  ship with the bank.  Title to the funds passes to the bank, and the depositor receives a contract

19  claim against the bank for an amount equal to the account balance."[31]  "A debt is not a trust and

20  there is not a fiduciary duty relation between debtor and creditor as such."[32]  Thus, "banks, in

21  general ... are not fiduciaries for their depositors."[33]

22

23

---

24  [30]    BofA recognizes that the Court cannot take judicial notice of this fact, which is not al-
    leged in the complaint.  BofA mentions it only by way of explanation for the complaint's other-
    wise inexplicable failure to allege expressly a breach of the Online Agreement's actual terms.

25  [31]    *In re Bakersfield Westar Ambulance, Inc.*, 123 F.3d at 1246.

26  [32]    *Downey v. Humphreys*, 102 Cal.App.2d 323, 332 (1951).

27  [33]    *Cruz v. United States*, 219 F.Supp.2d 1027, 1039 (N.D. Cal. 2002), *quoting Copesky v.
    Superior Court*, 229 Cal.App.3d 678, 694 (1991); *see also Petherbridge v. Prudential Sav. &
28  Loan Assn.*, 79 Cal.App.3d 509, 517-523 (1978).

1    Nor is there anything unique about an online bill payment service that transforms what

2    otherwise would be simply a debtor-creditor relationship into a fiduciary or agency relationship.

3    Online bill payment is simply a new technology for carrying out the same payment function that

4    has been part of the standard banking function since the fourteenth century.  In the fourteenth

5    century, payment was made by a bill of exchange drawn on a Lombard banker or money

6    changer.[34]  Beginning in the 1780's, payment was made by checks drawn on goldsmiths and later

7    on banks.  *Id.*  Nowadays, payment is made by a wide variety of other means as well:  wire trans-

8    fers, credit and debit cards, ATM cards, ACH debits, and telephone and online banking trans-

9    actions including bill payments.[35]  Though times and technology have changed, the payment

10   function and the basic principles applicable to that function have not.

11    The genius of the common law has been its adaptability to new situations.  So that what

12   started out as the law merchant in the late medieval period, was adopted and refined by the Eng-

13   lish courts, especially Lord Mansfield, during the 1700s, and continues to govern the relationship

14   of bank and depositor with respect to checks, wire transfers and other new payment mecha-

15   nisms.[36]

16    To be sure, BofA follows its depositors' online instructions in making payments to third

17   parties and charging the depositors' accounts.  But BofA does precisely the same thing when it

18   honors checks drawn on its depositors' accounts.  In following the depositor's instruction on a

19   check "Pay to the order of [payee]," BofA does not act as the depositor's fiduciary or agent.[37]

20

21   [34]    *See* 1 Henry J. Bailey & Richard B. Hagedorn, Brady on Bank Checks, ¶1.01, p. 1-1 (rev. ed. 2009).

22   [35]    *See* 1 Barkley & Barbara Clark, The Law of Bank Deposits, Collections and Credit Cards, ¶1.06[3], [4][c], pp. 1-51—1-54 (rev. ed. 2009).

23   [36]    *See* 1 Henry J. Bailey & Richard B. Hagedorn, *supra* n. 16, at ¶1.02, p. 1-2.  As an exam-
24   ple, the rule Lord Mansfield enunciated in *Price v. Neal*, 3 Burr. 1354 (1762) lives on in slightly
     modified form in UCC §§3-417(a), 3-418(a)-(c), 4-208(a) (checks), UCC §§4A-202, 4A-205
     (wire transfers), and 15 U.S.C. §1693g(a) (credit, debit and ATM cards; ACH transactions).

25   [37]    *See Danning v. Bank of America*, 151 Cal.App.3d 961, 969 (1984) ("The relationship be-
26   tween a payor bank and its customers is that of debtor and creditor, being founded upon contract,
     and the bank is under a duty to pay checks only in strict accordance with its customer's order.");
27   *Certified Grocers of Cal., Ltd. v. San Gabriel Valley Bank*, 150 Cal.App.3d 281, 286 (1983)
     ("When a bank receives deposits it becomes the debtor of the depositor and its implied contract
28   with him is to discharge that indebtedness by honoring such checks as he may draw upon it ….").

- 18 -

There is no legal difference when BofA follows the depositor's electronic instruction to perform the same function through its online bill payment service.

To create an agency relationship, the agent must not only act for the principal but must be subject to the principal's control in carrying out those acts.

> An agent acts on behalf of the principal and subject to the princi-
> pal's control.  " 'In the absence of the essential characteristic of the
> right of control, there is no true agency ....' "[38]

An online bill pay customer exercises no control over BofA.  The customer specifies only who will be paid, how much and when—the same information that a depositor writes on a check. BofA (or its vendor) takes care of everything else on its own without the customer's intervention or control.  As the Online Service Agreement clearly states that it is BofA, not the customer, that decides whether payment will be made electronically, by corporate check or by personal check— and hence, determines whether the funds will be withdrawn from the customer's account on the "Delivery By" date or the date of presentment.[39]  "If control may be exercised only as to the result of the work and not the means by which it is accomplished, … an independent contractor rela- tionship [not an agency] exists."[40]

The Online Service Agreement creates an independent contractor relationship, not an agency, as it gives the customer no right to control BofA's means or method of accomplishing the desired result; namely, payment of a specified amount to a particular payee on a specified date.

---

[38]    *Korean Air Lines Co., Ltd. v. County of Los Angeles*, 162 Cal.App.4th 552, 562 (2008) (citations omitted), *quoting van't Rood v. County of Santa Clara*, 113 Cal.App.4th 549, 571 (2003); *see also Huong Que, Inc. v. Luu*, 150 Cal.App.4th 400, 410 (2007).

[39]    "You authorize us to make payments ***in the manner we select*** from the following meth- ods:  Electronic transmission … Corporate check … Personal check …."  (RJN, Ex. C, §III.B., 5th dotted ¶; emphasis added.)

[40]    *In re Coupon Clearing Serv., Inc.*, 113 F.3d 1091, 1099 (9th Cir. 1997), *citing Dorsic v. Kurtin*, 19 Cal.App.3d 226, 238 (1971) ("An independent contractor is one who renders service in the course of independent employment or occupation following his employer's desires only as to the results of the work, not as to the means whereby it is to be accomplished.  One of the major factors of an agency relationship, as distinguished from that of an independent contractor, is the right to control the manner and means of accomplishing the result desired.").

1   BofA owes its online bill pay customers no fiduciary or agency duty.  Accordingly, the

2   third and fifth causes of action should be dismissed.  They allege no claim on which relief may be

3   granted.

4       **E.       A Depositor Cannot Sue The Bank For Conversion Of A Deposit**

5       Plaintiffs' fifth cause of action attempts to allege a claim for conversion based on BofA's

6   allegedly transferring funds from plaintiffs' account when not authorized to do so and thereafter

7   earning interest for itself, and not plaintiffs, on the prematurely transferred funds.  (Compl., ¶¶77,

8   78.)  The complaint further alleges that plaintiffs' accounts "held money, of which Plaintiffs were

9   the sole and rightful owner" and that "Defendant's wrongful exercise of ownership over Plain-

10  tiffs' money" caused plaintiffs financial harm.  (*Id.*, ¶¶76, 80.)

11      These allegations are incorrect as a matter of law.  As the Ninth Circuit explained three

12  decades ago:

13          [Depositor's] attempt to premise his counterclaim and the ensuing
            judgment on the tort of conversion is wholly without merit.  It is a
14          well-settled principle of California law that the relationship be-
            tween a bank and its depositor is one of debtor and creditor.  There-
15          fore, when funds are deposited, title to those funds passes immedi-
            ately to the bank.  Since the money thus becomes the literal prop-
16          erty of the bank, it cannot be tortiously converted by the bank.  It
            necessarily follows that [depositor's] counterclaim cannot prevail
17          on this theory.

18  *Crocker-Citizens Nat. Bank v. Control Metals Corp.*, 566 F.2d 631, 637 (9th Cir. 1977) (fn. &

19  citations omitted).[41]

20      For the reason explained in the foregoing quotation, plaintiffs cannot state a viable con-

21  version claim against BofA.  Nothing about their Online Agreement or the bill payment serves

22  changes the fundamental nature of plaintiffs' deposit accounts.  Plaintiffs' money became BofA's

23  property when plaintiffs deposited the money in their bank accounts.  Since it was BofA's money,

24  BofA could not convert it.  Plaintiffs have no claim for conversion.  Their fifth cause of action

25  should be dismissed.

26

27  [41]    *Accord:  Smith's Cash Store v. First Nat'l Bank,* 149 Cal. 32, 35 (1906); *Metropolitan Life Ins. Co. v. San Francisco Bank*, 58 Cal.App.2d 528, 534 (1943).

28

- 20 -

# IV.

## THE FRAUD CLAIMS ARE NOT ALLEGED WITH PARTICULARITY

"In alleging fraud …, a party must state with particularity the circumstances constituting fraud …."  Fed. R. Civ. P. 9(b).  To meet this standard, the complaint must allege "particular facts going to the circumstances of the fraud, including time, place, persons, statements made and an explanation of how or why such statements are false or misleading."[42]

Rule 9(b) applies not only to these two claims labeled "fraud" but also to all averments of fraud and all causes of action that are "grounded in fraud" or "sound in fraud" because they are based on an alleged unified course of fraudulent conduct.[43]  Even when fraud is not an essential element of a claim, Rule 9(b)'s particularity requirement applies to any averments of fraud.  Where a plaintiff alleges a uniform course of fraudulent conduct and relies on that conduct as the basis of a claim, the claim "sounds in fraud" and the plaintiff must plead the whole claim with particularity.  *Id.*  Thus, Rule 9(b) governs UCL and CLRA claims, for example.[44]

Plaintiffs' first and second causes of action under the UCL and CLRA plainly fall within Rule 9(b)'s scope.  (*See* Compl., ¶¶37, 38, 51, 52.)  Plaintiffs' third and sixth causes of action for breach of fiduciary duty and breach of agency also appear to be based on misrepresentation or concealment, at least in part.  (*See* Compl., ¶¶65, 89.)  To that extent, Rule 9(b) also applies to the third and sixth causes of action.

---

[42]   *Morris v. BMW of N. Am., LLC*, 2007 WL 3342612, at *3 (N.D. Cal. 2007) (citing *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 n.7 (9th Cir. 1994) (en banc)); *see also Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (noting that under Rule 9(b) "the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.").

[43]   *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003); *Oestreicher v. Alienware Corp.*, 544 F.Supp.2d 964, 968 (N.D. Cal. 2008).

[44]   *See, e.g., Lovesy v. Armed Forces Benefit Ass'n*, 2008 WL 4856144 at *6 (N.D. Cal. 2008) ("Allegations of unlawful, unfair, or fraudulent acts under the UCL must be pled with a reasonable degree of particularity."); *Parrish v. National Football League Players Ass'n*, 534 F.Supp.2d 1081, 1093 (N.D. Cal. 2007) ("Section 17200 claims that are grounded in fraud must satisfy the particularity requirements of Rule 9(b)."); *Hartless v. Clorox Co.*, 2007 WL 3245260 at *6 (S.D. Cal. 2007) ("claims sounding 'in fraud,' including those brought under the CLRA and UCL, must satisfy Rule 9(b)").

1

None of these claims are alleged with the particularity Rule 9(b) requires.  The complaint,

2

for example, never mentions the FAQ which apparently underlies plaintiffs' claims, but instead

3

alleges supposed misrepresentations in airy generalities:

4

> Defendant has represented **on its website and in written materials

5

> marketing and describing its online bill paying services** that, in the
> case of an electronic payment, the payment amount "is automati-
> cally subtracted … on the Deliver By date."  In contrast, when De-

6

> fendant chooses to print and mail a paper check, Defendant repre-
> sents that the money leaves the customer's account "when the

7

> payee cashes the check."  …

8

> Defendant's representations, **including those identified herein,**
> pertaining to the disposition of funds in electronic bill paying trans-

9

> actions, are false. …

10

> Defendant has failed to disclose or inform its customers of substan-
> tial and material facts concerning its online banking and electronic

11

> banking services, **including, without limitation,** the fact that, I the
> course of electronic bill paying transactions, Defendant prematurely

12

> transfers the customers' money into separate accounts ….

13

> … Defendant's deceptive marketing and sales practices, **including
> affirmative misrepresentations and omissions,** are material and

14

> substantial and were made in the form of common misrepresenta-
> tions of material facts upon which persons, including members of

15

> the Class, could be expected to rely **….**

16

> Defendant made uniform written representations that its online
> banking and electronic bill paying services were "free" and that, in

17

> the case of paper checks, funds would not be withdrawn from cus-
> tomers' accounts until the "payee cashes the check."

18

(Compl., ¶¶25, 26, 29, 38, 52 (emphasis added).)

19

As these selections from the complaint illustrate, the complaint does not allege the pur-

20

ported misrepresentations or omissions with particularity as required under Rule 9(b).  Even if

21

plaintiffs cannot specify the dates on which statements were made or who made them, they cer-

22

tainly can specify where those statements appeared in writing, either on-line or on paper.  As an

23

obvious example, the complaint might mention the FAQ.  The complaint fails to provide even

24

that level of detail, but instead, carefully hedges even its general allegations of fraud with phrases

25

like "including without limitation" so BofA and the Court are left to wonder what other allegedly

26

false statements plaintiffs do or might rely upon.  In all of these respects, the complaint fails to

27

28

1   meet Rule 9(b) standards.  For that additional reason, the first, second, third and sixth causes of

2   action should be dismissed.

3                                                    **V.**

4                                            **CONCLUSION**

5          For the reasons stated above, neither the complaint nor any of its causes of action state any

6   claim on which relief may be granted.  The first, second, third and sixth causes of action also fail

7   to meet Rule 9(b) standards for pleading fraud.  Accordingly, the entire pleading should be dis-

8   missed.

9

10  DATED:  April 2, 2009                    SEVERSON & WERSON
                                             A Professional Corporation
11
                                                     /s/ *Jan T. Chilton*
12
                                             By: _____
13                                                        Jan T. Chilton

14                                           Attorneys for Defendant
                                             Bank of America, N.A.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 23 -